FARMERS & MERCHANTS BANK *v.* James L. POE, et al.

CA 85-414                                           718 S.W.2d 457

Court of Appeals of Arkansas
Division II
Opinion delivered October 29, 1986

152

*Ponder & Jarboe*, by: *Dick Jarboe*, for appellant.

*Kirby Riffel*, for appellee.

DONALD L. CORBIN, Judge. Appellant, Farmers and Merchants Bank, appeals a decision of the Randolph County Chancery Court, cancelling and releasing a promissory note. Appellee, James L. Poe, cross-appeals the decision of the chancellor awarding appellant the expenses related to collection of the note in question in a bankruptcy action. We affirm.

There were two notes involved in this litigation. The "Coy Rogers" note involved a secured real estate loan from appellant to appellee James Poe in 1979. In January of 1980, appellee James Poe and another individual obtained a loan from appellant on the security of two certificates of deposit to start a retail clothing store in Memphis, Tennessee. In January of 1981, the business was incorporated as Studio One, Inc., and the second note in question, known as the "Studio One" note, was made with Studio One, Inc., as a maker. This note was secured by the inventory of Studio One, Inc. It is disputed by the parties whether appellee James Poe was a co-maker or guarantor of this note.

In April of 1981, a fire destroyed the inventory of Studio One, Inc.; however, it was insured in a sufficient amount to discharge the indebtedness owed on the "Studio One" note. In July of 1981, Studio One, Inc., was placed in a Chapter Seven involuntary bankruptcy proceeding by its unsecured trade creditors. The trustee in bankruptcy challenged appellant's claim to a perfected security interest in the inventory of Studio One, Inc., because appellant did not perfect its security interest until July 1, 1981. As a result of this challenge by the trustee in bankruptcy, appellant only received $10,000 of the insurance proceeds paid into the bankruptcy estate of Studio One, Inc. The parties entered into an agreement on October 23, 1984, providing for the $10,000 payment on the "Studio One" note to appellant. This agreement contained specific reservation of rights provisions in favor of appellant and appellee James Poe. With respect to the "Studio One" note, the chancery court held that appellant was barred from proceeding on a collection of the balance of the "Studio One" note because of the settlement of the claim in the bankruptcy proceeding.

The "Coy Rogers" note, became involved in this suit because a tender of payment was made by appellee James Poe to appellant which did not match the balance due on it because appellant charged this note with the "Studio One" accrued interest. The chancellor ruled that the interest on the "Studio One" note could not be charged to the "Coy Rogers" note and granted judgment for a lesser amount. Appellant raises four issues and appellee James Poe cross-appeals. We will consider each issue in the order raised.

## I.

### THE COURT INCORRECTLY APPLIED THE LAW CONCERNING THE EFFECT OF THE SETTLEMENT AGREEMENT.

Appellant relies on the language in Ark. Stat. Ann. § 85-3-606 (Add. 1961) which states:

Impairment of recourse or of collateral. — (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

(a) without express reservation of rights releases or

agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

(2) By express reservation of rights against a party with a right of recourse the holder preserves

(a) all his rights against such party as of the time when the instrument was originally due; and

(b) the right of the party to pay the instrument as of that time; and

(c) all rights of such party to recourse against others.

Appellant specifically relies on § 85-3-606(2)(a)(b) and (c), alleging that pursuant to the terms of the settlement agreement, it had preserved its rights to personally sue appellee James Poe for the deficiency on the "Studio One" note. However, appellant also admits that appellee James Poe preserved his rights to raise impairment of collateral as a defense. The evidence was uncontradicted that the collateral was impaired because of appellant's failure to properly file its security agreement with the Tennessee Secretary of State so as to perfect its security interest in the Studio One, Inc., inventory.

The loan to Studio One, Inc., was made on January 9, 1981; however appellant's financing statement was not filed until August 10, 1981. This was effected subsequent to the beginning of Studio One, Inc.'s bankruptcy action in July of 1981. Appellee James Poe adduced evidence that appellant not only impaired the collateral but also established the extent to which that impairment resulted in a loss. *See Van Balen v. Peoples Bank & Trust Co.*, 3 Ark. App. 243, 626 S.W.2d 205 (1981). The loss was easily

established by the fact that had the security interest been perfected, the proceeds from the insurance covering the loss of the Studio One, Inc., inventory would have covered the entire indebtedness owed appellant. Appellant failed to present proof to rebut the evidence that it had failed to perfect its security interest nor did it rebut the proof of the extent to which that impairment resulted in a loss.

■ In J. White and R. Summers, *Handbook of the Law under the Uniform Commercial Code*, § 13-15 (1980), it is noted that Section 3-606(1)(b) does not authorize the creditor to reserve his rights when he impairs the collateral. The evidence in the instant case supports the conclusion that appellant unjustifiably impaired the collateral and this act by appellant discharged appellee James Poe. Appellant could not reserve its rights by virtue of the settlement agreement of October 23, 1984, and we hold that the trial court's application of the law in respect to the settlement agreement was not in error.

## II.

### THE EVIDENCE IS NOT CLEAR, STRONG AND CONVINCING THAT APPELLEE JIM POE WAS A GUARANTOR OF THE NOTE RATHER THAN A CO-MAKER.

■ We agree with the chancellor's determination that the issue of whether appellee James Poe was a guarantor or maker on the "Studio One" note was immaterial. In construing the language of Ark. Stat. Ann. § 85-3-606, the Arkansas Supreme Court stated: " '[a]ny party to an instrument' as used therein is broad enough to include all makers and endorsers." *Rushton v. U.M.&M. Credit Corp.*, 245 Ark. 703, 707, 434 S.W.2d 81, 83 (1968). Accordingly, appellee James Poe could properly raise the defense of impairment of collateral either as a maker or a guarantor.

Appellant erroneously argues that appellee James Poe's status on the "Studio One" note is critical because if the trial court had determined appellee Poe's status to be a co-maker on the note, that determination would eliminate any question concerning impairment of the collateral. This argument is without merit inasmuch as the term "any party to an instrument" in §

85-3-606(1) includes makers and endorsers.

III.

## THE COURT ERRED IN FAILING TO HOLD THAT PRINCIPLES OF ESTOPPEL SHOULD BE APPLIED AGAINST APPELLEE IN EXECUTING THE NOTE DATED DECEMBER 23, 1982.

The main thrust of appellant's contention here is that when appellee James Poe executed the renewal note on December 23, 1982, appellee Poe was aware that a serious question existed concerning appellant's perfection of its security interest in the Studio One, Inc., inventory. Appellant suggests that inasmuch as this note was executed and ratified with knowledge of this defect or defense, appellee James Poe is estopped from contending that the collateral was impaired. Appellant refers this court to 11 Am. Jur. 2d *Bills and Notes* § 391 (1964), pertaining to whether the execution of a renewal note cuts off defenses available against the original note. This section, however, provides that in a great many cases, it has been held on the grounds of either waiver or estoppel that the renewal of a note precludes defenses of which the *maker* has knowledge. *See The City National Bank of Fort Smith, Arkansas* v. *Vanderboom*, 290 F.Supp. 592 (W.D. Ark. 1968), *aff'd*, 422 F.2d 221 (8th Cir. 1970). Appellant also cites as authority a number of Arkansas cases for the general rule that as between the *maker* and the payee, any defense that would be good against the original note would be equally good against a note taken in renewal without additional consideration. *See Dodd* v. *Axle-Nut Sign Co.*, 126 Ark. 14, 189 S.W. 663 (1916).

In the instant case, the chancellor determined appellee James Poe was a guarantor on the "Studio One" note. We believe this finding is amply supported by the evidence. The renewal note dated December 23, 1982, established appellee James Poe's status as a guarantor. A memo from appellant's cashier to appellee James Poe dated March 18, 1982, was entered into evidence and requested appellee Poe to sign and return an attached Guaranty Agreement. The language of the settlement agreement dated October 23, 1984, reflects that appellee James Poe was considered by appellant as a guarantor on the "Studio One" notes. The notes which pre-dated the renewal note of December 23, 1982, also established appellee James Poe's status

as a guarantor. Correspondence between appellant and appellee James Poe's attorney reflected appellee Poe's guarantor status. Appellant's Extension Agreement dated March 26, 1984, referred to appellee James Poe's personal guaranty of the "Studio One" note. A proof of claim form filed by appellant on May 9, 1984, in the Studio One, Inc., bankruptcy action indicated appellant's claim was subject to the "endorsement of Jim Poe and Catherine M. Poe d/b/a."

■ ■ In addition to the above documentary evidence supporting the conclusion that appellee James Poe was a guarantor on the "Studio One" note, there was also credible testimony by appellee Poe to this effect. Although we review chancery cases *de novo*, we will not set aside the chancellor's findings of fact unless they are clearly erroneous or against the preponderance of the evidence. *Cuzick* v. *Lesly*, 16 Ark. App. 237, 700 S.W.2d 63 (1985); ARCP Rule 52(a). We agree with the chancellor's finding that appellee James Poe was a guarantor and not a maker on the "Studio One" note. Accordingly, appellee James Poe's status on the "Studio One" note as a guarantor disposes of appellant's argument that appellee Poe was estopped from contending appellant unjustifiably impaired the collateral due to its failure to perfect a security interest in the collateral.

Appellant also argues that although appellee James Poe was aware of the problems with the bankruptcy proceedings, he nevertheless renewed the "Studio One" note on December 23, 1982. We find no merit to this contention for the same reasons we have enunciated in the issue concerning appellant's failure to perfect its security interest in the collateral and appellee James Poe's knowledge of this defect. Appellee James Poe's defense to the note was not precluded in view of his status as a guarantor on the "Studio One" note.

## IV.

THE COURT SHOULD HAVE FOUND APPEL-LEE WAS ESTOPPED BY RIFFEL'S LETTER OF JULY 3, 1984.

Appellant has requested that we examine the letter of July 3, 1984, from appellee James Poe's attorney to appellant's president. The letter was written in reference to appellant's Extension

Agreement dated May 8, 1984, and provided in pertinent part as follows:

> I will contact the lawyer handling the bankruptcy matter in Memphis to find out to what extent, if any, this obligation is involved or affected by the bankruptcy proceedings and once that information is in hand, I will be in contact with Mr. Poe and will advise you as to what seems to be the best course to pursue at this time.

> We are, of course, counting on the fact that your efforts to have all or part of your obligation paid by the principal corporation will be successful thereby reducing Mr. and Mrs. Poe's individual liability. Therefore, we encourage you to make every effort to secure payment from the corporation. When that has been done, any personal guarantees will be honored.

Appellant argues that the purpose of the letter was to reaffirm appellee James Poe's guaranty of the "Studio One" note and that by doing so, appellee Poe waived his defenses to the enforcement of his guaranty. Appellant contends that appellee James Poe's conduct in this regard provided appellant with a separate basis for asserting estoppel. We do not agree with appellant's interpretation of the letter and find no merit to this argument.

The chancellor obviously considered the letter as a whole within the time and context in which it was written and concluded that appellee James Poe's attorney did not know the true state of affairs surrounding the bankruptcy action at the time the letter was written. It is well settled that whether estoppel is applicable is an issue of fact to be decided by the trier of fact. *Askew Trust* v. *Hopkins*, 15 Ark. App. 19, 688 S.W.2d 316 (1985). Furthermore, the party asserting estoppel must prove it strictly, there must be certainty to every intent, the facts constituting it must not be taken by argument or inference, and nothing can be supplied by intendment. *Ward* v. *Worthen Bank & Trust Co.*, 284 Ark. 355, 681 S.W.2d 365 (1984), citing *Martin, Inc.* v. *Indiana Refrigeration Lines, Inc.*, 262 Ark. 671, 560 S.W.2d 228 (1978). We cannot conclude the chancellor's finding that appellee James Poe was not estopped by his attorney's letter to appellant was clearly erroneous.

CROSS-APPEAL

## APPELLEE SHOULD NOT BE REQUIRED TO PAY ATTORNEY'S FEES INCURRED EXCLUSIVELY FOR THE BENEFIT OF APPELLANT.

Appellee James Poe contends that if the chancellor properly determined appellant unjustifiably impaired the collateral, the legal expenses incurred by appellant were not expenses related to the collection of the note inasmuch as appellant's negligent actions rendered collection impossible. Appellee James Poe argues that appellant's legal fees were incurred in the furtherance of appellant's business and not appellee's.

■■ The chancellor ordered appellee James Poe to pay appellant's legal fees incurred in the bankruptcy proceeding. It is well settled that the award of attorney's fees addresses itself to the sound discretion of the trial court and will not be reversed in the absence of an abuse of discretion. *Troutt* v. *First Federal Savings & Loan Association of Hot Springs*, 280 Ark. 505, 659 S.W.2d 183 (1983); *Pack* v. *Hill*, 18 Ark. App. 104, 710 S.W.2d 847 (1986). Appellee James Poe cites us to no authority on this point. Assignments of error presented by counsel in their brief, unsupported by convincing argument or authority, will not be considered on appeal unless it is apparent without further research that they are well taken. *Warner* v. *Warner*, 14 Ark. App. 257, 687 S.W.2d 856 (1985). We fail to find an abuse of discretion on the part of the chancellor here.

Affirmed on direct appeal; affirmed on cross-appeal.

CLONINGER and MAYFIELD, JJ., agree.